UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT ARMBRUSTER | CIVIL ACTION

VERSUS | NO. 16-16327

AVALON RE: PARTNERS, LLC & STEVEN ANDERSON | SECTION: M (2)

**ORDER & REASONS**

Before the Court is the motion of defendants Avalon RE: Partners, LLC ("Avalon") and Steven Anderson ("Anderson") (collectively the "Anderson Parties") to dismiss the claims of plaintiff Robert Armbruster ("Armbruster") on grounds of res judicata pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Armbruster filed an opposition to the motion,[2] to which the Anderson Parties replied in support of the motion.[3] The Court heard oral argument on the motion on October 31, 2018. Thereafter, the Anderson Parties filed a supplemental memorandum in support of the motion[4] and submitted a letter advising of a recent court action.[5] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

## I. BACKGROUND

This action arises out of complicated business dealings, including numerous real estate and construction ventures, between Anderson and Armbruster, individually and through entities they respectively control. As the Louisiana court of appeal for the fourth circuit has recently observed, "[t]he ventures jointly entered into by Mr. Anderson and Mr. Armbruster have spawned much

---

[1] R. Doc. 47.
[2] R. Doc. 52.
[3] R. Doc. 58.
[4] R. Doc. 63.
[5] R. Doc. 66.

litigation." *Armbruster v. Anderson*, 250 So. 3d 310, 312 (La. App. 2018). That court recounted the pertinent factual and procedural background in the following fashion:

> The joint venture that gave rise to the instant litigation ["*Armbruster v. Anderson*"] involved a project to rehabilitate property at 621 Celeste Street in New Orleans, Louisiana (the "Property").
>
> Briefly summarized, the factual background of the venture is as follows. On March 21, 2006, pursuant to an act of cash sale, Religious and Celeste, LLC ("R & C"), an entity co-owned by the Armbrusters,[1] acquired the Property for $1,480,000.[2] R & C ultimately intended to develop the Property, in multiple phases, into mixed use commercial, retail, and residential space. The first phase of R & C's development plans was to rehabilitate the building located on the Property, which at the time of acquisition was a three-story shell in poor condition. R & C used [F.I.N.S. Construction, LLC ("FINS")] – Mr. Armbruster's construction company – to perform the work.[3] R & C also began the process of applying for historic tax credits ("HTC") for the rehabilitation project.
>
> R & C financed the rehabilitation project by obtaining from Omni Bank ("Omni") two loans, totaling $2,872,000, which the Armbrusters personally guaranteed. R & C defaulted on the Omni loans, and Omni commenced a foreclosure action on June 10, 2009. To avoid foreclosure, Mr. Armbruster, acting as R & C's representative, entered into a deal with Mr. Anderson and two of his companies, Avalon and [Cambrie Celeste, LLC ("Celeste")]. The deal, as ultimately closed, encompassed two steps. Collectively, these two steps are referred to as the "Transaction."
>
> The first step of the Transaction was an act of cash sale, executed on December 29, 2009, by which R & C transferred title to the Property to Celeste subject to the Omni mortgage. The second step of the Transaction occurred on March 22, 2010, when Celeste assumed R & C's Omni debt. As part of the Transaction, Mr. Armbruster and Mr. Anderson, through their respective companies, also entered into various other agreements, including a lease (the "Lease").
>
> The Lease was an integral part of the second step of the Transaction. According to the Defendants [which included Anderson, Celeste, Cambrie Partners I, LLC ("Partners"), and Cambrie Celeste Commercial Tenant, LLC ("Tenant")], the parties entered into a New Markets Tax Credit ("NMTC") transaction to obtain a low market loan to refinance the existing debt on the Property. In order for the NMTC transaction to close, the Property had to be leased. On March 22, 2010, Celeste leased to Tenant the commercial component of the Property. On that same date, Celeste, Tenant, and Starboard Management, LLC ("Starboard"), a company owned by the Armbrusters, entered into the Lease. Under the Lease, Starboard rented the residential component of the Property from Celeste and the commercial component from Tenant. Contemporaneously, the Armbrusters, FINS, and [Cambrie Celeste Developer, LLC ("Developer")] (collectively the "Guarantors")

executed an agreement to guarantee Starboard's obligations under the Lease (the "Guaranty").

About three months after the second step of the Transaction, on June 2, 2010, R & C filed a petition for relief under Chapter 11 of the Bankruptcy Code.[4] [Ahead of R & C's bankruptcy filing, Starboard and the Guarantors (including Armbruster) had failed to pay rent for the Property under the Lease.] On March 1, 2012, Celeste and Tenant (the lessors) filed in Louisiana state court a cumulated action for eviction and breach of contract against Starboard and the Guarantors.[5]

In response, on March 29, 2012, R & C filed an adversary proceeding in the Bankruptcy Case against Mr. Anderson, Celeste, Partners, and Avalon (the "Adversary Proceeding").[6] The gist of R & C's claims in the Adversary Proceeding was that the documents executed in connection with the Transaction did not accurately memorialize the deal it had made with Mr. Anderson and that instead Mr. Anderson defrauded R & C with respect to the Transaction.[7] The relief R & C requested was to have the Bankruptcy Court void the Transaction.

In March and April 2013, a seven-day trial was held in the Adversary Proceeding. On April 11, 2014, the Bankruptcy Court's Judgment was issued, dismissing R & C's claims. On August 11, 2014, the United States District Court for the Eastern District of Louisiana affirmed the Bankruptcy Court's Judgment, stating: "[i]nsofar as the core proceedings are concerned, the Court finds that the ruling of the Bankruptcy Court is not clearly erroneous; as to all other claims, the Court finds no error of fact or law on this record, and accepts the Bankruptcy Court's proposed findings of fact and conclusions of law, overruling objections to the same."

After the conclusion of the trial in the Adversary Proceeding, the stay of the Eviction Case was lifted in July of 2013. During the following three years of litigation of the Eviction Case, Starboard was summarily evicted and held in contempt.[8] On July 27, 2016, the trial court granted a motion for summary judgment filed by Celeste and Tenant and rendered judgment against Starboard and the Guarantors in the amount of $1,614,941.69, representing past due rent and damages. Starboard and the Guarantors appealed. On November 6, 2017, this court affirmed the trial court's judgment granting summary judgment as to Starboard only; however, as to the Guarantors, this court reversed the trial court's judgment granting summary judgment and remanded for further proceedings. *Cambrie Celeste LLC v. Starboard Mgmt., LLC*, 16-1318 (La. App. 4 Cir. 11/6/17), 231 So.3d 79, *writ denied*, 17-2041 (La. 2/2/18), 235 So.3d 1110 (hereinafter "*Starboard*").

Meanwhile, on October 27, 2016, while the appeal in the Eviction Case was still pending, the Plaintiffs [which included the Armbrusters, FINS, and Developer] filed in Louisiana state court the instant suit [*Armbruster v. Anderson*], styled a petition for declaratory judgment. In their petition, the Plaintiffs set forth in detail the facts of the Transaction and alleged that Mr. Anderson and the other defendants

– companies owned and controlled by Mr. Anderson – drafted and fraudulently induced Mr. Armbruster, on behalf of the other plaintiffs, to execute six specific agreements (the "Anderson Documents") in a complex scheme to enable the Defendants to obtain lucrative tax credits.[9] Through the petition, the Plaintiffs sought to rescind the Anderson Documents. In the alternative to rescinding the Anderson Documents, the Plaintiffs sought damages for bad faith breach of contract and unfair trade practices. In response, the Defendants filed an exception of res judicata. On June 7, 2017, the trial court rendered judgment granting the Defendants' exception of res judicata and dismissing with prejudice the Plaintiffs' claims.[10] This appeal followed.[11]

[1] In March 2006, R & C was formed as a Louisiana limited liability company. When it was formed, R & C had two members – ABNA, LLC and CNRT, LLC. In late 2007 or early 2008, CNRT ceased to be a member, leaving ABNA as the only remaining member. ABNA was owned by the Armbrusters, who each were 50% members.

[2] Although originally a single lot known only as "Lot Q," the Property is subdivided into Lot Q, on which the building bearing the municipal address 621 Celeste Street is situated; and Lot Q-2, which is an adjacent, vacant lot.

[3] After R & C's work, the building contained a mix of ten residential units and two commercial units.

[4] *In re: Religious and Celeste, LLC*, Docket No. 2010-11958, United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Case").

[5] *Cambrie Celeste LLC v. Starboard Mgmt., LLC*, Docket No. 2012-1997 in the Civil District Court for the Parish of Orleans, (the "Eviction Case").

[6] As a result of a consent agreement between the parties in the Adversary Proceeding, the Eviction Case was stayed.

[7] In its complaint, R & C asserted the following seven causes of action: (1) fraudulent transfers under § 548 of the Bankruptcy Code; (2) recovery of the transfers or the value of the transfers under § 550 of the Bankruptcy Code; (3) avoidance of the transfers under the Louisiana revocatory action and other fraudulent transfer laws under § 544(b) of the Bankruptcy Code; (4) unjust enrichment under state law; (5) fraud under state law; (6) piercing the corporate veil or single business enterprise under state law; and (7) recovery of unlawful distributions under state law.

[8] As noted elsewhere in this opinion, the Eviction Case was stayed for about one year as a result of the Bankruptcy Case. After the trial in the Adversary Proceeding but before that court rendered a decision, the Guarantors and Starboard, filed, in the Eviction Proceeding, a reconventional demand and an amended reconventional demand asserting the same claims they assert in this case (hereinafter the "Reconventional Demand").

[9] The Anderson Documents are as follows:

- Historic Tax Credit Guaranty, executed December 29, 2009, between the Armbrusters and Mr. Anderson;
- Development Agreement, executed December 28, 2009 between Cambrie Celeste and Cambrie Developer;
- Security and Pledge Agreement, executed March 22, 2010, by the Armbrusters, FINS, Cambrie Developer, and Starboard in Mr. Anderson's favor;

- Environmental and Hazardous Substances Indemnity Agreement, executed March 22, 2010, by the Armbrusters in Mr. Anderson's favor;
- Deposit Account Control and Pledge Agreement, executed March 22, 2010, by Omni, Mr. Anderson, and Cambrie Developer;
- Operating Agreement of Cambrie Partners, executed March 22, 2010, between Avalon and Mr. Armbruster.

Although in the petition the Plaintiffs refer once to the Lease Agreement as one of the Anderson Documents, elsewhere in the petition the Plaintiffs specifically enumerate the Anderson Documents as those six documents set forth above. Moreover, Starboard (the lessee) is not a party to this litigation.

10 The Defendants also requested sanctions, which the trial court denied. The ruling denying sanctions is not contested.

11 As discussed elsewhere in this opinion, this court rendered its decision in *Starboard, supra,* reversing, in part, the trial court's decision in the Eviction Case on November 6, 2017, which was after the trial court's judgment granting the Defendants' res judicata exception was rendered.

250 So. 3d at 312-315.[6]

On June 27, 2018, the Louisiana court of appeal upheld the trial court's judgment dismissing with prejudice the Plaintiffs' claims in *Armbruster v. Anderson* on grounds of res judicata. *Id.* at 315-22. Applying Louisiana law on res judicata, the court concluded that the Bankruptcy Court's judgment in the Adversary Proceeding barred any relitigation of the claims of Plaintiffs (including Armbruster) against Defendants (including Anderson and Avalon) for fraudulent inducement, bad faith breach of contract, and unfair trade practices, which each sought to rescind the Anderson Documents that facilitated the Transaction. Armbruster and the other Plaintiffs had argued that res judicata did not apply because R & C "was the sole plaintiff in the Adversary Proceeding and thus the sole party to whom the Bankruptcy Court could grant relief"; that R & C was not a party to the Anderson Documents; and that none of the Plaintiffs (including Armbruster) were named plaintiffs in the Bankruptcy Case. *Id.* at 318. The Louisiana court of appeal rejected these arguments, holding that Armbruster and the other Plaintiffs were privies of

[6] To avoid confusion, this Court will use in this Order and Reasons the same definitions employed by the Louisiana court of appeal in the foregoing excerpt. For an even more detailed description of the Transaction, including the involvement, *inter alia*, of Armbruster, R & C, Anderson and Avalon, see the memorandum opinion issued by the Bankruptcy Court in the Adversary Proceeding. R. Doc. 47-4.

R & C for purposes of res judicata. In doing so, the court found strong support in the Bankruptcy Court's observation that "[d]espite the many entities and the sometimes multiple interests in the limited liability companies, the basic conflict in this case is between Robert Armbruster as the real plaintiff in interest and Steven Anderson as the real defendant in interest." *Id*. at 319 (quoting the Bankruptcy Court and identifying supporting statements in the pretrial order filed in the Adversary Proceeding by Armbruster, Anderson, and Avalon, among others).

The state court of appeal also concluded that "[t]he claims R & C asserted in the Adversary Proceeding involve the same transaction and occurrence at issue" in the *Armbruster v. Anderson* case, because at issue in both cases was the validity of the documents facilitating the tax credit transaction, including most notably for present purposes, the Partners operating agreement. *Id*. at 320. In both cases, the Armbruster parties or privies sought to void the Transaction, in part, so they could recover the $500,000.00 capital contribution allegedly made by Armbruster.

Finally, the Louisiana court of appeal in *Armbruster v. Anderson* rejected the argument of Armbruster and the other Plaintiffs that "a bankruptcy court lacks subject matter jurisdiction over claims [like theirs] that 'do not relate to the bankruptcy estate,'' and that, as a consequence, res judicata could not apply. *Id*. at 320-21. In rejecting Plaintiffs' argument, the state court of appeal relied upon the judgment of this Court affirming the Bankruptcy Court's judgment in the Adversary Proceeding, after concluding that the Bankruptcy Court had subject matter jurisdiction over all matters related to the Transaction giving rise to the claims asserted in the Adversary Proceeding. *Id*. at 321.[7]

On November 5, 2018, the Louisiana Supreme Court denied the writ application of Armbruster and the other Plaintiffs, thereby making final the court of appeal's ruling that res

[7] R. Doc. 47-11.

judicata barred Armbruster from relitigating his claims related to the Transaction against Anderson, Avalon, and the other defendants.[8]

In the meantime, on November 11, 2016, just fifteen days after filing the *Armbruster v. Anderson* case in state court, Armbruster filed his complaint in federal court initiating the captioned civil action against the Anderson Parties.[9] Armbruster alleges that Avalon, as the managing member of Partners,[10] and Anderson, as an "unauthorized member" of Partners, breached the Partners operating agreement and their fiduciary duties to Partners and Armbruster. Armbruster alleges generally that "Avalon acted with reckless disregard and complete carelessness by clearly failing to act in the best interests of [Partners and Armbruster]."[11] In particular, Armbruster complains that Avalon caused Anderson "to be the sole member listed in the LLC formation documents," even though Anderson was never identified as a member of Partners, and Armbruster never consented to Anderson's being a member as required by the Partners operating agreement.[12] Armbruster further complains that Avalon failed to establish separate capital accounts for each of Partners' two members; it failed to account to Armbruster for his capital account; Anderson usurped Avalon's role as manager and likewise failed to account to Armbruster for his capital account; the Anderson Parties colluded to deprive Armbruster of "all value" in Partners; and the Anderson Parties violated in unspecified ways Section 12:1314 of the Louisiana Revised Statutes (which addresses the duties of members and managers of an LLC) and the

[8] R. Doc. 66.
[9] R. Doc. 1.
[10] Avalon has a 99.9% membership interest in Partners, and Armbruster holds the remaining 0.1% interest. R. Doc. 47-4 at 1.
[11] R. Doc. 1 at 7.
[12] *Id*.

Partners operating agreement.[13] The only remedy Armbruster seeks is monetary damages, including, in particular, a "return" of Armbruster's capital contribution of $500,000.00.[14]

## II. PENDING MOTION

In support of their Rule 12(b)(6) motion to dismiss, the Anderson Parties contend that Armbruster is attempting to avoid a $1,614,941.69 judgment rendered against him and in favor of Anderson "by repeatedly averring in numerous tribunals that the transaction at issue (sale of certain property from the Armbrusters to Anderson), was 'fraudulent' in an attempt to 'unwind' the transaction."[15] The Anderson Parties assert that Anderson and Armbruster, individually or through their various entities, have been engaged in as many as eleven "highly contentious lawsuits, proceedings, and arbitrations" involving "the same piece of property, issues, and parties (or their privies)."[16] The Anderson Parties argue that Armbruster's claims in the captioned action are barred by the doctrine of res judicata because they were asserted, fully litigated, and dismissed, or could have been asserted, in three of these lawsuits, including the Adversary Proceeding,[17] the Eviction Case, and *Armbruster v. Anderson.*[18]

Armbruster responds that this action is "a straight forward suit regarding the fiduciary and contractual responsibilities of Avalon," not "the facsimile of [the] fraud suit maintained by [R & C] during its bankruptcy."[19] After all, Armbruster continues, R & C is not a member of Partners,

---

[13] *Id.* at 7-9

[14] *Id*. at 9. While Armbruster's complaint includes quotations of many provisions of the Partners operating agreement, the complaint fails to quote Section 3.3 of the operating agreement, which provides:

> **No Right to Withdraw Capital Contributions.** No Member will have the right to withdraw its Capital Contribution or to demand and receive property of the Company or any distribution in return for its Capital Contribution, nor will any Member have any right or obligation to contribute additional capital, except as may be specifically provided in this Agreement.

[15] R. Doc. 47-1 at 2.

[16] *Id.*

[17] *Religious & Celeste, LLC v. Cambrie Celeste, LLC,* No. 12-1021 (Bankr. E.D. La. filed Mar. 29, 2012).

[18] No. 2016-10644, *dismissed* (June 7, 2017), *aff'd*, 250 So. 3d 310 (La. App. 2018), *writ denied*, No. 2018-C-1276 (La. Nov. 5, 2018).

[19] R. Doc. 52 at 1.

so, in the Adversary Proceeding, it could not have challenged Avalon about its breaches of the Partners operating agreement and of its duties as the managing member of Partners.[20] In addition, Armbruster contends that the Bankruptcy Court was without jurisdiction to address such matters as they did not relate to the bankruptcy estate of R & C.[21]

## III. LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads

[20] *Id.* at 1-3.

[21] This argument was made by Armbruster's counsel at oral argument of the motion to dismiss in the captioned case, and it parallels the argument made by Armbruster to the Louisiana court of appeal for the fourth circuit in *Armbruster v. Anderson*. 250 So. 3d at 321.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540

F.3d 333, 338 (5th Cir. 2008); *see also Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Analysis**

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citations omitted).

> The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Id.* "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute," codified at 28 U.S.C. § 1738. *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1984). Section 1738 requires "a federal court to refer to the preclusion law of the State in which the judgment was rendered." *Id.*; *see also Prod. Supply Co. v. Fry Steel, Inc.*, 74 F.3d 76, 78 (5th Cir. 1996). Because the Anderson Parties ask this Court to give res judicata effect to judgments rendered by a federal court and by a Louisiana state court, federal res judicata and Louisiana res judicata govern each respective part of this Court's analysis.

There is no dispute that the third element is satisfied with regard to the present action. The Bankruptcy Court judgment in the Adversary Proceeding was a final judgment on the merits before

it, as were the judgments of the state courts in *Armbruster v. Anderson*. But Armbruster disputes each of the other elements for res judicata.

**1. The Same Claim or Cause of Action was Involved in Both Actions**

The transactional test is used in the Fifth Circuit to determine whether two suits involve the same cause of action – the fourth element of res judicata. That court has described the transactional test this way:

> Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. The critical issue is whether the two actions are based on the "same nucleus of operative facts."

*Test Masters*, 428 F.3d at 571 (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)); other citations omitted).

The Anderson Parties argue that all of Armbruster's claims in the captioned civil action relate to the $500,000.00 developer fee (or as Armbruster says, his capital contribution), and such claims were raised or should have been raised in the Adversary Proceeding because "they arise out of the 'same nucleus of operative facts' – the Transaction as a whole."[22] This Court agrees.

In the memorandum opinion issued with its order dismissing R & C's claims, the Bankruptcy Court went to great lengths to detail the Transaction and how the developer fee (capital contribution) fit into the Transaction.[23] The Bankruptcy Court rejected R & C's effort to have the

[22] R. Doc. 47-1 at 21.

[23] R. Doc. 47-4 at 11-12. *See also* R. Doc. 47-6, esp. at 5-7 (R & C's complaint initiating the Adversary Proceeding, which sets out the allegations related to the Transaction and the fee/contribution).

fee/contribution returned to the debtor, which was controlled by Armbruster.[24] The Bankruptcy Court concluded that Anderson, not Armbruster, was the source of the funds constituting the fee/contribution, expressly finding that R & C and Armbruster "never owned, never paid and never received the developer fee."[25] In addition, the Bankruptcy Court rejected R & C's claims that Armbruster was fraudulently induced into the Transaction and executing the Transaction Documents.[26]

In the captioned matter, Armbruster has repackaged the fraud claims and his efforts to unwind the Transaction and to obtain the $500,000.00 fee/contribution as claims for breach of fiduciary duty and breach of an operating agreement of an entity (Partners) in which he holds but a minimal interest (0.1%). Partners was formed solely to facilitate the tax credit aspect of the Transaction.[27] The breaches of duty that Armbruster alleges all relate to conduct of the Anderson Parties that either involved implementation of the Transaction's steps (*viz.*, Anderson's fraudulent inducement of Armbruster to sign the Partners operating agreement, and his conversion of the fee/contribution to his own use)[28] or give rise to no apparent injury (*viz,*, listing Anderson as a member of Partners on its annual report when, in fact, Avalon is Partners' managing member, and Anderson the controlling member of Avalon).[29] In short, the Anderson Parties correctly observe that the claims adjudicated in the Adversary Proceeding and those asserted by Armbruster here arise from the same course of dealing and share the same objective – unwinding the Transaction and recovering the fee/contribution for Armbruster. *See McIntyre v. Ben E. Keith Co.*, 2018 WL 5733212, at *2-3 (5th Cir. Oct. 30, 2018) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d

---

[24] R. Doc. 47-4 at 12.
[25] *Id.*
[26] *Id.* at 18-21.
[27] *Id.* at 11-12.
[28] R. Doc. 1 at 3, 7.
[29] *Id*. at 3, 7-9.

309, 314 (5th Cir. 2004) (claims arose from same series of transactions)). The two actions, then, are based on the same nucleus of operative facts.

Moreover, the Fifth Circuit has noted that a debtor's confirmed plan of reorganization has wider res judicata scope than would a narrowly drawn adversary proceeding. *Eubanks v. FDIC*, 977 F.2d 166, 172 (5th Cir. 1992); *In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990) ("[A] plan is binding upon all parties once it is confirmed and all questions that could have been raised *pertaining to such plan* are res judicata.") (emphasis in original); *see also Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984) (where court approved agreement and settlement that a mortgagee could purchase the sole asset of a corporation in reorganization proceedings for the unpaid balance on its claim, res judicata barred a subsequent action arising from the same transaction, in which debtor asserted that mortgagee had acted improperly in acquiring title to the asset). Unwinding the Transaction was at the heart of R & C's plan of reorganization, and its confirmation encompassed all remedial rights growing out of the Transaction. *Eubanks*, 977 F.2d at 172 (holding lender liability claims in second action were based on same transaction that gave rise, in part, to confirmed plan or reorganization, such that there was an identity of claims between confirmation proceeding and lender liability suit). Thus, the confirmation of R & C's plan of reorganization constitutes an additional bar (with the judgment in the Adversary Proceeding) to the relitigation of claims seeking to unwind the Transaction or the Transaction Documents and to recover the fee/contribution on behalf of Armbruster or his privies.

In addition, to the extent the Anderson Parties look to the state court judgments in *Armbruster v. Anderson* as the bar to the claims Armbruster asserts in the captioned case, this Court's task becomes even easier, because the state courts there performed the very res judicata analysis under Louisiana law that would be required here. That the Louisiana courts concluded

that Armbruster's claims against Anderson seeking to unwind the Transaction and, in part, to recover the fee/contribution were barred puts an end to this Court's analysis of the question. Under full faith and credit, this Court should not second guess the state courts' conclusion that the Adversary Proceeding involved the same cause as was before them in *Armbruster v. Anderson*.

**2. The Parties Are in Privity**

Under the first element of the test for res judicata, the parties must be identical or in privity. The Fifth Circuit has explained:

> It is well-settled that, under certain circumstances, a judgment may bar a subsequent action by a person who was not a party to the original litigation. For example, where the non-party's interests were adequately represented by a party to the prior action, we have concluded that there is sufficient identity between the parties to apply the principles of res judicata and give preclusive effect to the prior judgment. A non-party . . . is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative. This requires more than a showing of parallel interests – it is not enough that the non-party may be interested in the same questions or proving the same facts.

*Eubanks*, 977 F.2d at 170 (citations omitted).

The Anderson Parties contend that "Armbruster controlled the prior litigation" and his "interests were more than adequately represented," so that Armbruster should be deemed a privy of R & C and thus bound by the judgment in the Adversary Proceeding.[30] The Court agrees.

The Bankruptcy Court made special note of the fact that the Adversary Proceeding was a contest between Armbruster, on the one hand, and Anderson, on the other.[31] As an entity completely owned and controlled by Armbruster and his wife, R & C had every motivation to advance Armbruster's interests as his "virtual representative." Moreover, the Louisiana trial court and court of appeal in *Armbruster v. Avalon* arrived at the same conclusion, holding that

[30] R. Doc. 47-1 at 22.

[31] R. Doc. 47-4 at 1 n.5 ("Despite the many entities and sometimes multiple interests in the limited liability companies, the basic conflict in this case is between Robert Armbruster as the real plaintiff in interest and Steven Anderson as the real defendant in interest.").

Armbruster's claims there were barred by res judicata since they had been adjudicated by Armbruster's privy, R & C, in the Adversary Proceeding.[32]

Nevertheless, Armbruster argues that R & C was not a member of Partners so "could not have maintained, for its benefit or the benefit of the bankruptcy estate, an action against Avalon (or Steven Anderson) for the complete failure of Avalon in its capacity as the managing member of [Partners]" and that Armbruster's claim for "Avalon's breach was not the subject of any suit brought by [R & C] in bankruptcy court."[33] This is a facile argument. R & C's complaint in the Adversary Proceeding was directed against Anderson and Avalon, among others,[34] and sought to unwind the Transaction Documents (including the Partners operating agreement) and to have the fee/commission returned. Armbruster had every reason to see that R & C fully litigated these issues in the Adversary Proceeding. The Court concludes that the identity-of-parties requirement is met by the judgment in the Adversary Proceeding.

This conclusion is even more apparent with respect to the state court judgments in *Armbruster v. Anderson*, because that case involved the identical parties (Armbruster, Anderson, and Avalon) as are before this Court in the captioned matter.

**3. Judgment in the Prior Action was Rendered by a Court of Competent Jurisdiction**

The third element of res judicata is that the judgment in the prior action has been rendered by a court of competent jurisdiction. Federal courts apply the doctrine of res judicata to give effect to the decisions of bankruptcy courts and to avoid relitigation of matters which were, or could have been, litigated in concluded bankruptcy proceedings. *See generally Eubanks*, 977 F.2d at 170-74; *Southmark Props.*, 742 F.2d at 869-77. Nevertheless, at oral argument, Armbruster's counsel

[32] 250 So. 3d at 318-20.
[33] R. Doc. 52 at 1.
[34] R. Doc. 47-4 at 1.

argued that the Bankruptcy Court lacked subject matter jurisdiction to adjudicate claims concerning the fee/contribution because they did not relate to the bankruptcy estate of R & C. This Court concludes, as it did once before,[35] that the Bankruptcy Court, in issuing its judgment in the Adversary Proceeding, had subject matter jurisdiction over all matters related to the Transaction giving rise to the claims asserted in the Adversary Proceeding. *See In re Baudoin*, 981 F.2d 736, 740-41 (5th Cir. 1993) (bankruptcy jurisdiction exists if matter is "related to" bankruptcy in the sense that "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy") (quoting *Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987); emphasis in original). In bringing the Adversary Proceeding, R & C, which was controlled by Armbruster, must itself have concluded that the claim to unwind the Transaction and to recover the fee/contribution could have a conceivable effect on the bankruptcy estates. Having availed itself of the jurisdiction of the Bankruptcy Court in bringing the Adversary Proceeding, neither R & C nor its privy, Armbruster, can be heard now to complain about the scope and effect of the Bankruptcy Court's judgment in that proceeding. Thus, the judgment in the Adversary Proceeding was rendered by a court of competent jurisdiction.[36] Finally, Armbruster does not challenge that the judgments of the state courts in *Armbruster v. Anderson* were rendered by courts of competent jurisdiction. The third element of res judicata is satisfied.

## III. CONCLUSION

All the requisites of res judicata are satisfied as to bar relitigation of the claims Armbruster asserts against the Anderson Parties in the captioned matter. Accordingly, for the foregoing reasons,

---

[35] R. Doc. at 47-11.

[36] The Louisiana state courts came to this same conclusion in *Armbruster v. Anderson*, 250 So. 3d at 321.

**IT IS ORDERED** that Avalon RE: Partners, LLC and Steven Anderson's Rule 12(b)(6) Motion to Dismiss on Grounds of Res Judicata (R. Doc. 47) is GRANTED and Robert Armbruster's complaint (R. Doc. 1) is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Avalon RE: Partners, LLC and Steven Anderson's counterclaim and third-party complaint (R. Doc. 17) is DENIED AS MOOT.

New Orleans, Louisiana, this 20th day of November, 2018.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE